# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel Darlene C. Sammarco, | Civ. No. 09-880 (JRT/JJK) |
| Plaintiff, | |
| v. | |
| Cal Ludeman, as Minnesota Commissioner of Department of Human Svcs.; Jane Morrow, as Anoka County Court Administrator, Anoka County; Daniel Dauth, as Anoka County Social Services; Conservator Derrinda Mitchell, on Your Behalf; Attorney Linda Bogut; Dr. Michael Popkin, Hennepin County Medical Center Director of Psychiatry; Conservator Tracy Allen, designee for Professional Fiduciaries, Inc.; Karen Foy, Manager of Andrew Residence also known as Manager of Andrew Residence; Tom Mullon; Dr. Jonathan Uecker; and Dr. James H. Gilbertson, Phd; | **REPORT AND RECOMMENDATION** |
| Defendants. | |

Chad A. Blumenfield, Esq., Assistant United States Attorney, counsel for Plaintiff United States ex rel.

Darlene C. Sammarco, 1307 52nd Avenue Northeast, Fridley, MN 55421, *pro se.*

Linda L. Bogut, Esq., Bogut Law Office, *pro se.*

Michelle E. Weinberg, Esq., and Richard A. Duncan, Esq., Faegre & Benson LLP, counsel for Defendant Dr. Michael Popkin.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant Michael Popkin's Motion to Dismiss (Doc. No. 18), and Defendant Linda Bogut's Motion to Dismiss and/or for a More Definite Statement (Doc. No. 21). These motions have been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that both motions be granted.

## BACKGROUND

Plaintiff Relator Darlene C. Sammarco ("Plaintiff"), originally filed this suit on March 19, 2009. (Doc. No. 1.) On August 10, 2009, Plaintiff filed an Amended Complaint. (Doc. No. 11, Am. Compl.) In the Amended Complaint, Plaintiff pursues a *qui tam* action based on alleged violations of the False Claims Act,[1] and a civil action under the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO").[2] In lieu of filing an answer, Defendants Michael Popkin and Linda Bogut each filed motions to dismiss, Popkin's on August 31, 2009 (Doc. No. 18), and Bogut's on September 3, 2009 (Doc. No. 21).[3]

---

[1] 31 U.S.C. § 3729, *et seq.* The False Claims Act provides: "A person may bring a civil action for a violation of section 3729 [of the False Claims Act] for the person and for the United States Government. The action shall be brought in the name of the government." 31 U.S.C. § 3730(b)(1).

[2] 18 U.S.C. § 1961, *et seq.*

[3] After Popkin and Bogut filed their motions to dismiss, Plaintiff filed a number of motions seeking various forms of relief, including a motion for a new
(Footnote Continued on Following Page)

The Amended Complaint is, at best, confusing.[4] Many of the allegations therein have no discernable connection to any cause of action mentioned. However, Plaintiff generally alleges that the State of Minnesota has been defrauding the United States by obtaining federal funds for the operation of state mental-health institutions and other facilities where individuals with mental illnesses are housed, forced to take psychiatric medications, and undergo other treatments that Plaintiff finds abhorrent. (*See* Am. Compl. at 3-4, 17, 18-19.)

Many of Plaintiff's other allegations relate to the conservatorship of Joanne Riebel, who is apparently Plaintiff's daughter, and who has been housed at the Hennepin County Medical Center Psychiatric Ward ("HCMC") and at the Anoka State Hospital. (*See id.* at 14, 16, 20, 23.) Riebel appears to have been civilly

---

(Footnote Continued from Previous Page)
trial (Doc. No. 37), and a motion for certification of a class action (Doc. No. 39), among others. In an October 28, 2009 Order, this Court determined that these motions should be stricken from the record because Plaintiff failed to comply with the Local Rules for the District of Minnesota. (*See* Doc. No. 72.) In another Order dated November 4, 2009, this Court struck from the record another motion by Plaintiff (Doc. No. 78), for failure to comply with the Local Rules as well. Among Plaintiff's violations of the Local Rules was the fact that she noticed several of these motions for hearing before this Court without ever contacting chambers to secure a hearing date. This practice runs afoul of the most basic element of civil-motion practice.

[4] Many of Plaintiff's allegations are woven into a section in her Amended Complaint devoted to a request that various judges recuse themselves from this litigation for suggestions of bias and based on previous decisions rendered in related lawsuits Plaintiff has filed. This Court has examined this section of the Amended Complaint as part of the substantive allegations Plaintiff has attempted to set forth.

committed and has a court-appointed conservator to represent her interests.[5] (*See id.* at 14, 21.) The Amended Complaint refers to several instances where Plaintiff has, in the past, attempted to challenge one aspect or another of that conservatorship in both state and federal court by filing cases and opposing petitions brought by state officials relating to the conservatorship. (Am. Compl. *passim*.)

With respect to Dr. Popkin, who is a psychiatric doctor at HCMC, Plaintiff alleges that on July 25, 2002, Riebel wrote a petition to have her conservator removed and to request permission to move back to Plaintiff's house. (*Id.* at 14.) Plaintiff alleges that the conservator devised a false story to have Riebel transferred to HCMC. Plaintiff further alleges that on August 9, 2002, in response to a petition, Hennepin County District Judge Patricia Belois signed an order permitting the administration of electroconvulsive therapy and a drug called Clorazil to Riebel. (*Id.*) Plaintiff alleges that Judge Belois's order permitted three times the electroconvulsive therapy recommended by Dr. Popkin in the petition requesting permission to administer that therapy. (*Id.*)[6] In addition, Plaintiff says

---

[5] According to the Amended Complaint, Riebel's conservator is Defendant Derrinda Mitchell. (Am. Compl. 14.)

[6] Although not incorporated into any of the Amended Complaint's allegations, Plaintiff's response to the Popkin's motion to dismiss provides some additional detail about this incident. Plaintiff clarifies that Popkin did not appear in court to testify regarding his recommendation that Riebel receive the electroconvulsive therapy. (Doc. No. 28, Pl.'s Resp. to Def. Michael Popkin Mot. to Dismiss and Mem. of Law ("Pl.'s Resp. to Popkin Mot.") 19.)

4

that Popkin, Riebel's psychiatrist Dr. Charles Pearson, Derrinda Mitchell, and Linda Bogut all harmed Riebel by "bringing a false petition in Hennepin County Court against [Riebel] for Electric Shock/Clorazil research in 2002, which resulted in [Riebel] having Grand mal seizures." (*Id.* at 41.)

With respect to Bogut, who was the attorney for Mitchell (the conservator for Riebel) for a period of time, Plaintiff alleges that Anoka County Judge Michael J. Roith cited Bogut and Mitchell for contempt in connection with a petition relating to Riebel. (Am. Compl. 15.) Apparently this citation was "for failing to file a yearly annual account that was due April 19, 2002," and Judge Roith allowed Mithcell and Bogut "to back-date the report and insert it into the Court Conservatorship file for Joanne Riebel." (*Id.* at 15-16) Plaintiff further alleges that Riebel was damaged as a result.

Plaintiff also asserts that Bogut represented Mitchell in a hearing on August 30, 2000, to determine whether Riebel's husband would have to pay back $3,600 that he owed Riebel in connection with divorce proceedings. (*Id.* at 25.) And Plaintiff alleges that in December 2000, Bogut and Mitchell "brought a frivolous Petition for conservatorship of [Plaintiff and her] estate, which was dismissed by Judge Sokolowski." (*Id.* at 25-26.) According to the Amended Complaint, Judge Sokolowski "ordered sanctions against Mitchell and Bogut for filing the frivolous petition," but that Bogut "kept delaying the hearing on the sanctions until Judge Sokolowski retired." (*Id.* at 38-39.) Plaintiff vaguely alleges

that Judge Bearse thereafter "adjudicated the conservatorship," but does not explain further what role Bogut played in these events. (*Id.* at 39.)

Bogut apparently represented Mitchell in connection with the petition before Judge Belois discussed above, in which Dr. Popkin recommended that Riebel receive electroconvulsive therapy. (*See* Am. Compl. 40-41.) Plaintiff appears to assert that Bogut wrongfully injured Riebel as a result of this representation. (*Id.*) Plaintiff does not provide more specifics, but appears to believe that Riebel should not have received the recommended treatment.

Plaintiff says that in June 2002, Mitchell and Bogut "brought a Petition for a restraining order against [Plaintiff] in Hennepin County Court," which the judge postponed on a number of occasions, and then apparently granted the petition at some future date. (*See id.* at 27-28.) Plaintiff also alleges that "Bogut prepared the sixth and final accounting in the conservatorship of Joanne Riebel and her estate, and Derrinda Mitchell signed the accounting report," but the "Mitchell-Bogut annual reports were not accurate and Mitchell and Bogut were removed from Joanne's conservatorship," and that Professional Fiduciaries, Inc., replaced Mitchell as conservator for Riebel in February 2006. (*Id.* at 29.)

Finally, Plaintiff alleges the following: "That the Civil Death ordered against [Plaintiff] by Judge Hoffman is VOID, which information is based on false statements in a petition for sanctions against [Plaintiff] by Attorney Linda Bogut, Conservator Derrinda Mitchell, and court and internet false information by Anoka Court Admin[istrator] Jane Morrow [who filed] false Documentation at the

courthouse and the internet regarding court judgment [that] has resulted in a low credit score for Relator and no credit for emergency situations." (*Id.* at 43.) This allegation appears to relate to something involving Jane Morrow's "retaliation against [Plaintiff] for naming Anoka judges in [a] previous federal lawsuit," but it is entirely unclear how Bogut is involved in these allegations. (*See id.* at 19-20.)

Defendants Popkin and Bogut each move to dismiss the claims asserted against them. Popkin argues that the claims against him should be dismissed for the following reasons: (1) the Amended Complaint fails to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) any claims that Plaintiff may have are barred by the applicable statutes of limitations; (3) Plaintiff lacks standing; and (4) this Court lacks subject matter jurisdiction over certain of Plaintiff's claims. Bogut contends that Plaintiff's claims against her should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### I.  Standard of Decision

A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must

7

allege facts, which if true, state a claim as a matter of law").

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

II.  **Defendant Popkin's Motion to Dismiss**

    A.  **False Claims Act Qui-Tam Claims**

        1.  **Failure to State a Claim**

To prevail on a claim under the False Claims Act, a plaintiff must show that "a defendant (1) 'knowingly presents, or causes to be presented, [to a federal official] a false or fraudulent claim for payment or approval,' or (2) 'knowingly makes . . . a false record or statement to get a false or fraudulent claim paid or approved.'" *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (quoting 31 U.S.C. § 3729(a)(1)-(2)).  False Claims Act complaints are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), meaning that "'a party must state with particularity the circumstances constituting fraud or mistake.'"  *Id.* (quoting Fed. R. Civ. P. 9(b)).  If a complaint "alleges a systematic practice of submitting fraudulent claims, the FCA complaint 'must provide *some* representative examples of [the] alleged fraudulent conduct,' specifying 'the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'"  *Id.* (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556-57 (8th Cir. 2006)).  "Put another way, the complaint must identify the 'who, what, when, where, and how' of the alleged fraud."  *Joshi*, 441 F.3d at 556 (quoting *United States ex. rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)).

As to Dr. Popkin, the Amended Complaint fails to state a claim for which relief can be granted under the False Claims Act.  First, the Amended Complaint does not allege that Dr. Popkin ever submitted a claim for payment or approval to

9

the United States. The only conduct Plaintiff alleges regarding Dr. Popkin is that he recommended a course of electroconvulsive-therapy treatment for Plaintiff's daughter, Joanne Riebel, in a petition brought by Riebel's conservator. These allegations have nothing to do with a claim submitted to a United States official for payment or approval. Nor does Plaintiff's allegation regarding Dr. Popkin's conduct address how Dr. Popkin "'intended that the false record or statement be material to the Government's decision to pay or approve the false claim.'" *See Roop*, 559 F.3d at 822 n.3 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2126 (2008)).

Plaintiff appears to argue that Dr. Popkin's electroconvulsive-therapy recommendation was fraudulent because Riebel did not need that treatment, and the submission of the petition including his recommendation was part of a systematic attempt by the State of Minnesota to fraudulently obtain federal funds for the civil commitment of persons with mental illnesses. Even if Plaintiff's conclusory allegation that the State of Minnesota intended to defraud the United States Government by requesting federal funds to administer its civil-commitment laws were true, Plaintiff offers no support (and this Court has identified none) for the proposition that an individual can be held liable for the submission of a false claim by a State. If Plaintiff is alleging that Dr. Popkin is a state official and was acting "'outside of [his] official duties'" such that he could be held liable for the commission of acts in his individual capacity, she would need to allege specifics about "the agreements between the United States and [Minnesota] or how

[Dr. Popkin's] actions may have been in violation of those agreements and federal law." See *U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 937 (8th Cir. 2001) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1016 (9th Cir. 2001)). Plaintiff's Amended Complaint falls far short of pleading such matters with any specificity, let alone the specificity required by Federal Rule of Civil Procedure 9(b). Therefore, Plaintiff's Amended Complaint should be dismissed to the extent it asserts any claims against Dr. Popkin under the False Claims Act.

### 2. Statute of Limitations

Alternatively, any False Claims Act claims against Dr. Popkin should be dismissed because they are barred by the statute of limitations. "Under 31 U.S.C. § 3731(b)(1), complaints alleging violations of the FCA may not be brought 'more than 6 years after the date on which the violation . . . is committed.'" *Joshi*, 441 F.3d at 555 n.2.[7] The six-year statute of limitations "'begins to run on the date the claim is made, or, if the claim is paid, on the date of payment.'" *United States ex. rel. Vosika v. Starkey Labs., Inc.*, Civ. No. 01-709 (DWF/SRN), 2004 U.S. Dist. LEXIS 18349, at *7-8 (D. Minn. Sept. 8, 2004)

---

[7]  Plaintiff has made no argument that the statute of limitations should be tolled pursuant to 31 U.S.C. § 3731(b)(2), which provides as follows: "A civil action under section 3730 may not be brought . . . more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed."

(quoting *United States ex. rel. Kreindler & Kreindlerr v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993)). In *Joshi,* the Eighth Circuit, after affirming a district court's order dismissing the plaintiff's complaint for failure to state a claim, upheld the district court's denial of leave to amend the complaint because the proposed amendments failed to tie additional allegations of fraud occurring more than six years before the filing of the complaint to a "continuous pattern of conduct." 441 F.3d at 558. Thus, the claims were futile because they would be barred by the statute of limitations. *Id.*

According to the Amended Complaint, Plaintiff was aware of Dr. Popkin's recommendation that Plaintiff's daughter should receive electroconvulsive therapy. Indeed, Plaintiff challenged that course of treatment at the time her daughter's conservator petitioned for its approval in front of Judge Belois in August 2002. Thus, Plaintiff was aware of the act underlying the False Claims Act claim against Dr. Popkin in August 2002. Even if Dr. Popkin's electroconvulsive-therapy recommendation was a "claim" within the meaning of the False Claims Act, the statute of limitations begins to run on the date the claim is made, and, therefore, would expire six years later in August 2008. Plaintiff's False Claims Act claim against Dr. Popkin is therefore barred by the statute of limitations.

Plaintiff appears to argue that the False Claims Act claim against Popkin is not barred by the statute of limitations based on the doctrine of respondeat superior. (Doc. No. 28, Pl.'s Resp. to Def. Michael Popkin Mot. to Dismiss and

Mem. of Law ("Pl.'s Resp. to Popkin Mot") 4.) Plaintiff offers no support (and this Court can find none) for the proposition that the doctrine of respondeat superior tolls the limitations period established by 31 U.S.C. § 3731. Further, Plaintiff's Amended Complaint contains no allegations that she is seeking to hold Dr. Popkin liable under a theory of respondeat superior.[8] Respondeat superior is a principle under which "'an employer is vicariously liable for the torts of an employee committed within the scope of employment.'" *Mosby v. McGee*, Civ. No. 07-3905 (JRT/RLE), 2009 WL 2171104, at *3 (D. Minn. July 20, 2009) (quoting *Fahrendorfff v. N. Homes, Inc.*, 597 N.W.2d 905, 910 (Minn. 1999)). Plaintiff has not pleaded any facts that Dr. Popkin is an employer, or that any of the other Defendants in this action are his employees.

In addition, Plaintiff argues that the statute of limitations is tolled based on Joanne Riebel's disability. (Pl.'s Resp. to Popkin's Mot. 4.) Plaintiff offers no support (and again this Court has found none) for the proposition that the False Claims Act's six-year limitations period can be tolled by the disability of an individual who is a non-party to the lawsuit.

For all of the above reasons, the Amended Complaint should be dismissed to the extent it asserts any claims against Dr. Popkin under the False Claims Act.

---

[8] In her response to Dr. Popkin's motion to dismiss, Plaintiff also asserts the following: "Dr. Popkin, as *Respondeat Superior is responsible for HCMC staff and therefore liable for defamation against plaintiff Sammarco in the HCMC psychiatric medical records." (Pl.'s Resp. to Popkin's Mot. 2.) It is unclear what Plaintiff is referring to, but in any event, Plaintiff has failed to plead defamation as a cause of action anywhere in her Amended Complaint.

### 3. Plaintiff Cannot Proceed *Pro Se*

Finally, the False Claims Act claims should be dismissed because this Court lacks subject-matter jurisdiction to hear a *qui tam* action brought on behalf of the United States by a party proceeding *pro se* where the United States has not intervened in the action. The False Claims Act "allows . . . private citizens acting on behalf of the United States, to recover treble damages from those who knowingly make false claims for money or property upon the United States, or who submit false information in support of such claims." *United States ex. rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 702 (8th Cir. 1995). The Court of Appeals for the Eleventh Circuit has held that a private individual cannot maintain a *qui tam* suit under the False Claims Act as a *pro se* relator because the district court will lack subject-matter jurisdiction over the claim. *Deutsche Bank Nat'l Trust Co. v. Holyfield*, 309 Fed. App'x 331, 332-33 (11th Cir. 2009) (citing *Timson v. Sampson*, 518 F.3d 870, 873-74 (11th Cir. 2008)). The Eleventh Circuit reasoned that because "[t]he United States is the 'real party in interest in a *qui tam* action under the False Claims Act,'" and 28 U.S.C. § 1654 permits only those licensed to practice law to conduct proceedings in federal court on behalf of anyone other than herself, a *pro se* party could not maintain an action on behalf of the United States. *See Timson*, 518 F.3d at 873-74 (quoting *United States ex. rel. Walker v. R&F Props. of Lack County, Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005 ), and 28 U.S.C. § 1654). The Ninth Circuit has also reached the conclusion that a *pro se* party may not bring a *qui tam* action where the United

14

States has declined to intervene. *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007).

Similarly, the Eighth Circuit has indicated that, even though the individual relator brings the suit, in a *qui tam* action under the False Claims Act, individuals "'sue on behalf of the government as agents of the government, which is always the real party in interest.'" *United States ex. rel. Rodgers v. State of Arkansas*, 154 F.3d 865, 868 (8th Cir. 1998) (quoting *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217 n. 8 (9th Cir.1996)); *see also Stadley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) ("A qui tam statute effectively assigns part of the government's interest to a relator so that the relator has standing to assert an injury suffered by the government."). And the Eighth Circuit has also held that a *pro se* party may not bring a *qui tam* action on behalf of the United States. *United States v. Onan*, 190 F.2d 1, 6 (8th Cir. 1951) ("[W]e do not think that Congress could have intended to authorize a layman to carry on . . . as attorney for the United States but must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in court for anyone other than himself.").

Here, although some of Plaintiff's filings appear to suggest otherwise, the United States has *not* intervened in this action. Consistent with the law in this Circuit, and that of other Circuits that have considered the issue, this Court concludes that Plaintiff may not bring this *qui tam* action *pro se.* Therefore,

Plaintiff's claims under the False Claims Act against Dr. Popkin should be dismissed.

### B. RICO Claims against Dr. Popkin

"To establish a RICO violation, a plaintiff must allege and prove '(1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity.'" *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003) (quoting *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996)).

With respect to Dr. Popkin, the RICO claims asserted in the Amended Complaint should be dismissed for failure to state a claim for which relief can be granted. The Amended Complaint lacks any factual allegations that Popkin ever committed an act that would amount to a RICO violation. *See* 18 U.S.C. § 1961(1). Moreover, the Amended Complaint also lacks any allegation that Dr. Popkin ever engaged in or was part of an enterprise that engaged in a pattern of such activity. The Amended Complaint merely includes vague and conclusory allegations that all of the Defendants, including Dr. Popkin, were part of an ongoing criminal enterprise, but such conclusory allegations are not sufficient to state a claim for relief for RICO violations. *See Lange v. Hocker*, 940 F.2d 359, 362 (8th Cir. 1991) (affirming district court's dismissal of the plaintiff's RICO claims, in part, because they were "vague and conclusory").

Plaintiff also lacks standing to bring a RICO claim against Dr. Popkin. "To have standing to bring a civil RICO claim, a plaintiff must have suffered injury 'by reason of' a RICO violation." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 728 (8th Cir. 2004) (quoting 18 U.S.C. § 1964(c)). Plaintiff has not pleaded any facts that she suffered any concrete financial loss. *See id.* (noting that "a showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest") (internal quotations omitted).

Alternatively, any RICO claims against Dr. Popkin should be dismissed because they are barred by the statute of limitations. In the Eighth Circuit, "[c]ivil RICO claims are governed by a four-year statute of limitations[, and] such an action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 238 (8th Cir. 1996) (quotations and citations omitted). Plaintiff's only allegation against Dr. Popkin refers to an event that took place in 2002, and according to the Amended Complaint, she was aware of that event at the time it occurred. Even if Dr. Popkin's electroconvulsive-therapy recommendation were sufficient to state a RICO violation, that recommendation was made more than four years prior to the filing of this action.

For all of the above reasons, the civil RICO claims against Dr. Popkin should be dismissed.

### III. Defendant Bogut's Motion to Dismiss

### A. False Claims Act Qui-Tam Claims

Just as Plaintiff failed to state a claim against Dr. Popkin under the False Claims Act, the Amended Complaint fails to state a claim against Bogut because it contains no allegation that Bogut ever filed a claim for funds from the federal government. The allegations against Bogut include that she represented Riebel's conservator, that she inaccurately or falsely conducted an accounting of Riebel's estate, that she was involved in the filing of a civil commitment petition directed at Plaintiff herself, and that she had some unspecified connection to something Plaintiff refers to as a "Civil Death." None of these allegations asserts that Bogut was involved in submitting a claim for payment or approval to the United States. *See Roop*, 559 F.3d at 822 n.3 (noting that a complaint must allege that the defendant "intended that the false record or statement be material to the Government's decision to pay or approve the false claim"). Moreover, all of Plaintiff's allegations against Bogut are of a vague and conclusory nature insufficient to satisfy the pleading requirements for claims grounded in fraud under Fed. R. Civ. P. 9(b).

Bogut's motion to dismiss also alternatively asked for a more definite statement of the allegations in the Amended Complaint, and Plaintiff filed a Response to Defendant Linda Bogut Motion to Dismiss Pleadings and/or More Definite Statement (Doc. No. 27, Pl.'s Resp. to Bogut's Mot.), in which Plaintiff purported to provide the more definite statement. But this Response and "more definite statement" to Bogut's motion iterates a number of the vague and

18

conclusory allegations in her Amended Complaint, including information about Bogut's representation of Mitchell in connection with the conservatorship of Riebel. Plaintiff argues in her response that Bogut and Mitchell "defrauded the federal government of federal funds in frivolous false imprisonment bogus Civil Commitments of Joanne Riebel and filing frivolous lawsuits against [Plaintiff]." (Pl.'s Resp. to Bogut's Mot. 18.) As with her Amended Complaint, nothing in Plaintiff's response or her "more definite statement" identifies any claim for payment that Bogut ever submitted to the United States. As a result, Plaintiff fails to state a claim for which relief can be granted under the False Claims Act, and this Court recommends that the False Claims Act claims against Bogut be dismissed.

### B. RICO Claims

The Amended Complaint fails to state a civil RICO claim against Bogut because it contains no allegations that Bogut ever engaged in any conduct that amounts to racketeering activity under 18 U.S.C. § 1961(1). Plaintiff's Amended Complaint contains no allegation that Bogut was ever involved in an act such as murder, kidnapping, arson, robbery, extortion, dealing in obscene matter, dealing in a controlled substance, bribery, counterfeiting, theft from interstate shipment, embezzlement from pension and welfare funds, or any other activity qualifying as "racketeering activity" under the statute. Therefore, Plaintiff fails to state a claim against Bogut for a RICO violation, and this Court recommends that the civil RICO claims against Bogut be dismissed.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Michael Popkin's Motion to Dismiss (Doc. No. 18), be **GRANTED**;

2. Defendant Linda Bogut's Motion to Dismiss (Doc. No. 21), be **GRANTED**; and

3. All claims against Defendants Michael Popkin and Linda Bogut be **DISMISSED WITH PREJUDICE**.


Date: December 11, 2009

                                            *s/ Jeffrey J. Keyes*
                                            JEFFREY J. KEYES
                                            United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 28, 2009,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within fourteen days of receipt of the Report.