# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel Darlene C. Sammarco, | Civ. No. 09-880 (JRT/JJK) |
| Plaintiff, | |
| v. | |
| Cal Ludeman, as Minnesota Commissioner of Department of Human Svcs.; Jane Morrow, as Anoka County Court Administrator, Anoka County; Daniel Dauth, as Anoka County Social Services; Conservator Derrinda Mitchell, on Your Behalf; Attorney Linda Bogut; Dr. Michael Popkin, Hennepin County Medical Center Director of Psychiatry; Conservator Tracy Allen, designee for Professional Fiduciaries, Inc.; Karen Foy, Manager of Andrew Residence also known as Manager of Andrew Residence; Tom Mullon; Dr. Jonathan Uecker; and Dr. James H. Gilbertson, Phd; | **ORDER** **AND** **REPORT AND RECOMMENDATION** |
| Defendants. | |

Chad A. Blumenfield, Esq., Assistant United States Attorney, counsel for Plaintiff United States ex rel.

Darlene C. Sammarco, 1307 52nd Avenue Northeast, Fridley, MN 55421, *pro se.*

John S. Garry, Esq., Assistant Minnesota Attorney General, counsel for Defendant Jane Morrow.

Anthony C. Palumbo, Esq., Assistant Anoka County Attorney, counsel for Defendant Daniel Dauth.

Derrinda Mitchell, Professional Conservator Services, 13055 Riverdale Drive NW, Suite 500 PMB 316, Minneapolis, MN, 55448, *pro se*.

Linda L. Bogut, Esq., Bogut Law Office, *pro se*.

Michelle E. Weinberg, Esq., and Richard A. Duncan, Esq., Faegre & Benson LLP, counsel for Defendant Dr. Michael Popkin.

Samuel D. Orbovich, Esq., Fredrickson & Byron, PA, counsel for Defendant Karen Foy.

Barbara E. Berg Windels, Esq., Assistant Minnesota Attorney General, and Friedrich A. P. Siekert, Esq., Assistant United States Attorney, counsel for Defendant Tom Mullon.

---

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before this Court on the following motions to dismiss:

(1) Defendant Andrew Residence's Motion to Dismiss (Doc. No. 41);

(2) Defendant Tom Mullon's Motion to Dismiss (Doc. Nos. 45, 52); (3) Defendant Jane Morrow's Motion to Dismiss (Doc. No. 56); (4) Defendant Daniel Dauth's Motion to Dismiss (Doc. No. 111); (5) Defendant Karen Foy's Motion to Dismiss (Doc. No. 95); and (6) Defendant Derrinda Mitchell's Motion to Dismiss Pleadings and/or for a More Definite Statement (Doc. No. 138).[1]  This matter is also before this Court on the following ten motions: (1) Plaintiff's Notice of Motion and Motion

---

[1]     This Court hereinafter refers to the Defendants bringing these motions to dismiss collectively as "the moving Defendants."  The other named Defendants in this matter Cal Ludeman, as Minnesota Commissioner of Department of Human Svcs., Conservator Tracy Allen, designee for Professional Fiduciaries, Inc., Dr. Jonathan Uecker, and Dr. James H. Gilbertson, Phd, have not entered any appearance.  This Court hereinafter refers to these Defendants as "the non-moving Defendants."

for New Trial, Memorandum of Law and to Vacate past VOID Federal Judgments
(Doc. No. 125); (2) Plaintiff's Notice of Motion and Motion to Include
Supplemental Comlpaint (Doc. No. 126); (3) Plaintiff's Notice of Motion and
Motion for Certification of Class Action, includes Memorandum of Law (Doc.
No. 127); (4) Plaintiff's Notice of Motion and Motion and Memorandum of Law to
VOID JUDGMENTS (Doc. No. 128); (5) Plaintiff's Petition for Judicial Substitution
for Cause Re: Removal of Judge John Tunheim and Magistrate Judge Keyes for
bias (Doc. No. 133); (6) Plaintiff's Affirmation for Notice of Motion and Motion for
Default against co-defendant (Doc. No. 134); (7) Plaintiff's Notice of Motion &
Motion to Remove Judge John Tunheim and Magistrate Jeffrey Keyes (Doc.
No. 142); (8) Plaintiff's Notice of Motion ad Motion for Default against co-
defendant Dr. Jonathan Uecker (Doc. No. 144); (9) Plaintiff's Notice of Motion
and Motion for Default against co-defendant James H. Gilbertson (Doc. No. 146);
and (10) Notice of Motion and Motion for Default against co-defendant Tracy
Allen (Doc. No. 148). These motions have been referred to this Court for a
Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1.
This matter is also before this Court on Plaintiff Relator Darlene Sammarco's
Notice of Motion and Motion to Include Supplemental Complaint (Doc. No. 120).
For the reasons stated below, this Court recommends that all of the dismissal
motions be granted, and denies Relator's motion to include a supplemental
complaint.

# BACKGROUND

Plaintiff Relator Darlene C. Sammarco originally filed this suit on March 19, 2009, (Doc. No. 1), and on August 10, 2009, Plaintiff filed an Amended Complaint. (Doc. No. 11, Am. Compl.) In the Amended Complaint, Plaintiff pursues a *qui tam* action based on alleged violations of the False Claims Act,[2] and a civil action under the Federal Racketeering Influenced and Corrupt Organizations Act ("RICO").[3] In lieu of filing an answer, the moving Defendants each filed motions to dismiss.

As noted in this Court's December 11, 2009 Report and Recommendation, the Amended Complaint is, at best, confusing.[4] Many of the allegations therein have no discernable connection to any cause of action mentioned. However, Plaintiff generally alleges that the State of Minnesota has been defrauding the United States by obtaining federal funds for the operation of state mental-health institutions and other facilities where individuals with mental illnesses are

---

[2]     31 U.S.C. § 3729, *et seq.* The False Claims Act provides: "A person may bring a civil action for a violation of section 3729 [of the False Claims Act] for the person and for the United States Government. The action shall be brought in the name of the government." 31 U.S.C. § 3730(b)(1).

[3]     18 U.S.C. § 1961, *et seq.*

[4]     Many of Plaintiff's allegations are woven into a section in her Amended Complaint devoted to a request that various judges recuse themselves from this litigation for suggestions of bias and based on previous decisions rendered in related lawsuits Plaintiff has filed. This Court has examined this section of the Amended Complaint as part of the substantive allegations Plaintiff has attempted to set forth.

housed, forced to take psychiatric medications, and treated in ways that Plaintiff finds abhorrent. (*See* Am. Compl. at 3-4, 17, 18-19.)

Many of Plaintiff's other allegations relate to the conservatorship of Joanne Riebel, who is apparently Plaintiff's daughter, and who has been housed at the Hennepin County Medical Center Psychiatric Ward ("HCMC") and at the Anoka State Hospital. (*See id.* at 14, 16, 20, 23.) Riebel appears to have been civilly committed and has had various court-appointed conservators to represent her interests.[5] (*See id.* at 14, 21.) Throughout the Amended Complaint, Plaintiff refers to several instances where she has attempted to challenge one aspect or another of that conservatorship in both state and federal court by filing cases and opposing petitions brought by state officials relating to the conservatorship. (Am. Compl. *passim.*)

Having outlined these general themes of the Amended Complaint, this Court now turns to the allegations against the moving Defendants.

## I.     Allegations against Defendants Andrew Residence and Karen Foy

Andrew Residence is an organization that provides long-term care, treatment, and rehabilitation services to adults with mental illness. (*See* Am. Compl. 41; Doc. No. 42, Mem. in Supp. of Mot. to Dismiss of Def. Andrew

---

[5]     According to the Amended Complaint, Riebel's conservator for some period of time was Defendant Derrinda Mitchell, and thereafter her conservator was Defendant Tracy Allen, who works for Professional Fiduciaries Incorporated. (Am. Compl. 14, 29.)

Residence ("Residence Mem.") 2; Doc. No. 96, Mem. in Supp. of Mot. to Dismiss of Def. Karen Foy ("Foy Mem.") 2.)  Karen Foy is the Administrator or Manager of Andrew Residence, and also its Chief Executive Officer.  (Am. Compl. 1, 16, 40; Residence Mem. 2; Foy Mem. 2.)  Andrew Residence apparently provided care to Riebel at various times.  (*See* Am. Compl. 16, 23-24, 27, 28, 41.)

According to the Amended Complaint, on October 15, 2002, after apparently receiving psychiatric treatment at HCMC, Riebel "was almost comatose when HCMC tried to return her to Andrew Residence."  (Am. Compl. 16.)  At that time, Foy apparently "refused to take [Riebel] back since she was dually committed to Anoka State Hospital, a/k/a AMRTC."  (*Id.*)

Plaintiff also asserts that in December 1999, when Derrinda Mitchell, Riebel's conservator, had Riebel transferred to Andrew Residence, Riebel "suffered many injuries at Andrew Residence and was treated numerous times at HCMC and Unity Hospital ER for most of those injuries."  (Am. Compl. 23.)  For instance, in August 2000, Mitchell had a podiatrist perform surgery on Riebel's foot, and then one evening, "[Riebel's] foot got slammed in Andrew Residence elevator doors.  According to a taped phone conversation with Andrew staff AMANDA, [Riebel] came out of her room the next morning with the bandage dragging from her ankle."  (*Id.* at 23-24.)  Thereafter, Riebel's foot apparently became infected requiring her to have surgery.  (*Id.* at 24.)

Then, on July 25, 2002, Riebel "presented a petition to remove Mitchell as her conservator."  (Am. Compl. 28.)  However, "Mitchell and [Foy] concocted a

story to have [Riebel] brought to Hennepin [C]ounty Court to destroy her memory with Electric Shock, so she couldn't testify against Derrinda Mitchell at the October 7, 2002 hearing to remove Mitchell." (*Id.*)  Plaintiff also asserts that Foy was involved in "bringing a false petition in Hennepin County Court against [Riebel] for Electric Shock/Clorazil research in 2002, which resulted in [Riebel] having Grand mal seizures[.]" (*Id.* at 41.)

In August 2004, Andrew Residence apparently received "Group Residential Housing Grants from Hennepin County for several thousand dollars per month," which were apparently obtained by Mitchell. (*Id.* at 28.)  Andrew Residence also apparently received monthly Social Security Income for rent for the patients it housed.  (*See id.*)  Finally, Plaintiff states as follows:

> 5.  Andrew Residence is an IMD Institution for Mentally Diseased with 112 patients.  IMD's are not eligible for medical assistance for residents under age of 65, but Andrew Residence has been collecting medical assistance, but illegally collecting Social Security, in addition to GRH/Group Residential Housing of over $3,000.00 per month.

(*Id.* at 41.)

## II.    Allegations against Defendant Tom Mullon

Tom Mullon is a former Medical Director of the Minneapolis VA Medical Center ("MVAMC"), in which he served as a federal employee, and the former Administrator of the Minnesota Veterans home, in which he served as a State of Minnesota employee.  (*See* Am. Compl. 31-32; Doc. No. 46, Mem. in Supp. of Mot. to Dismiss Claims against Tom Mullon Related to his Service as an

Employee of the United States of America or for a More Definite Statement

("Mullon USA Mem.") 1-2; Doc. No. 54, Mem. of Law in Supp. of Def. Mullon's

Mot. to Dismiss ("Mullon State Mem.") 1-2.)  In August 1985, while Mullon was

the MVAMC Director, Plaintiff apparently went to the MVAMC hospital "to get [a]

phoney [sic] mental illness label removed and to have [her] back examined."

(Am. Comp. 31.)  This "mental illness label" apparently concerns an attempted

commitment of Plaintiff that did not result in her commitment.  (*See id.*)

        At some unidentified point, a decision needed to be "made about what to

do with [an] old Veterans Building, [and Plaintiff] suggested it could be used for a

triage nursing home for disabled veterans who were on the waiting list for the

Veterans Home."  (*Id.* at 32.)  According to Plaintiff, both the "Commissioner of

Veterans Affairs and Sen. Bertram who was in charge of veterans affairs," were

interested in Plaintiff's idea, and "[t]he State of Minnesota could purchase the old

brick hospital building for $1.00 and renovate it for Eight Million Dollars."  (*Id.*)

But "Mullon said no."  (*Id.*)

        Then, "[a]fter Mullon retired from the [MVAMC], he supervised the

renovation of the Minneapolis Vets Home bldgs. 6 and 9, from 1997 to 2000."

(Am. Comp. 32.)  This renovation apparently cost several million dollars but

resulted in "moldy buildings."  (*Id.*)  "Minnesota officials are now trying to get

more federal dollars to tear down bldg. 9 and rebuild it, claiming the renovation

took place in the '80's."  (*Id.*)  Meanwhile, Plaintiff laments, "[t]here are about

4,000 veterans living on Minnesota streets, while other disabled veterans are in

State Asylums.  There is always a waiting list of about 200 to 300 at the Mpls.

Vets Home."  (*Id.*)

### III.    Allegations against Defendant Jane Morrow

Jane Morrow is an Anoka County Court Administrator.  (Am. Compl. 1, 19-

20, 35-36, 43-44.)  The Amended Complaint contains the following allegation

against Morrow:

> 11.  ANOKA COUNTY COURT ADMINISTRATOR JANE MORROW
> – RICO enterprise with Anoka Social Services Daniel Dauth,
> Conservator Derrinda Mitchell, her Atty. Linda Bogut and former
> AMRTC psychiatrist Dr. Jonathan Uecker.  a) Administrator fails to
> request staff to remove expired judgments from court file computer,
> b) An attorney has six years to enforce a judgment or it must be
> removed from file room records, which isn't done, c) Administrator
> allows bogus subpoenas to be used and allows attorneys involved in
> extortion, to <u>not</u> file summons and complaints on some defendants,
> thus allowing attorneys to win by default judgment, d) the
> Administrator's Anoka County government internet file does not give
> disposition of some cases.

(*Id.* at 19-20.)  These allegations somehow demonstrate Morrow's "ineptitude,"

thus making it possible for case files to be "misinterpreted."  (*Id.* at 20.)

In 1986, Morrow allegedly "wrote a letter[] to [Plaintiff] that [she] needed an

attorney before [she] would be allowed to present a case in Anoka Court, even

as a Defendant."  (*Id.*)  Plaintiff accuses Morrow of providing "false information as

to Anoka Courts judicial decisions."  (*Id.* at 36.)  "Morrow wrote letters to keep

[Plaintiff] away from the Anoka Courthouse and further provided false allegations

to prevent [Plaintiff] from filing a lawsuit or even defending against frivolous

lawsuits[.]"  (*Id.*)  Plaintiff also asserts that "Jane Morrow's retaliation against

[Plaintiff] by filing false Documentation at the courthouse and the internet regarding court judgment has resulted in a low credit score for [Plaintiff] and no credit for emergency situations." (*Id.* at 43.) And "[w]hen corrections for court file errors were sent to Court Administrator Jane Morrow, she merely returned the corrections to [Plaintiff] without making the necessary corrections to Anoka court documents and corrections to records in the real estate records room and the internet." (*Id.* at 44.)

## IV.    Allegations against Defendant Daniel Dauth

Daniel Dauth is an Anoka County Social Services employee. (Am. Compl. 1.) According to Plaintiff, in a hearing on September 22, 1999, to remove Mitchell as Riebel's conservator, Plaintiff's testimony was apparently limited by a state court judge to the topic of Plaintiff's supposed financial exploitation of Riebel. (Am. Compl. 21-22.) However, Plaintiff "had nothing to say, since the false accusation of financial exploitation by Daniel Dauth were [sic] dismissed by Department of Human Services on June 11, 1999." (*Id.* at 22; *see also id.* at 39.)

Then, in 2002, Plaintiff sought a temporary restraining order against HCMC to stop a proposed electroconvulsive therapy authorized by Hennepin County Judge Patricia Belois for Riebel. (*See id.* at 12.) At a hearing before United States District Judge Joan Lancaster, Plaintiff alleges that "Dauth and his counsel Atty. Palumbo presented the judge with a bad faith affidavit containing false info as the judge entered the courtroom." (*Id.*) Plaintiff then received a copy of this allegedly false affidavit. After Judge Lancaster later recused, United

States District Court Judge Paul Magnuson "took the TRO case and dismissed it."  (*Id.*)

Then, according to the Amended Complaint, "Defendant Dauth forced [Plaintiff's] mother into the [Crestview Nursing Home]" where she was "tortured and injured . . . in October 1998," and "provided a false affidavit to Judge Joan Lancaster stating that [Plaintiff's] mother was injured at the home."  (*Id.* at 37.)  The Amended Complaint continues:

> The last few days of records were destroyed at Crestview, but [Plaintiff] had already gotten the records that indicated [her mother's] hip and leg were fractured at Crestview.  Apparently Dauth was unaware that [Plaintiff] had gotten the records before they were removed from [Plaintiff's] mother's file.

(*Id.*)

Dauth was also somehow involved in the purported RICO allegations against Morrow set forth above.  (*See* Am. Compl. 19.)

## V. Allegations against Derrinda Mitchell

As noted in footnote 5, *supra*, Derrinda Mitchell served for some time as the conservator for Plaintiff's daughter, Riebel.  (Am. Compl. 1, 16, 21-29, 38, 39, 40, 43.)  The bulk of the allegations in the Amended Complaint concern Mitchell's service as Riebel's conservator.  One of these allegations states that on September 22, 1999, "there was a hearing before JUDGE ED BEARSE to remove Mitchell as [Riebel's] conservator.  [Plaintiff] informed Judge Bearse of [an] irrevocable trust [that Plaintiff had established for her two daughters] and gave Derrinda Mitchell a copy of [that] trust."  (*Id.* at 21-22 (emphasis in original).)

At that hearing Mitchell stated that half of Riebel's home's value, representing Riebel's interest in the property, was $82,000. (*See id.* at 22.) Plaintiff insists that Mitchell provided "perjured testimony" regarding whether Riebel had been committed to AMRTC when Riebel had a law firm reassign her interest in the home to Plaintiff. (*See id.*) Nevertheless, Judge Bearse "'assumed' [Riebel] was incompetent when she reassigned her [interest in the property to Plaintiff.]" (*Id.*) According to Plaintiff, "[t]he Conservatorship of [Riebel] by Derrinda is VOID." (*Id.*)

Plaintiff also alleges that in December 1999, despite having testified at a previous hearing in Anoka County that Riebel "was too vulnerable to live at Andrew Residence, Mitchell had . . . Riebel transferred to Andrew[ Residence] from AMRTC[.]" (Am. Compl. 23.) Following this transfer, Riebel suffered a number of injuries including an injury to her foot. (*Id.* at 23-24.) According to Plaintiff, "Mitchell lied to [a podiatrist performing a foot surgery on Riebel] stating [that Plaintiff] pulled a surgical pin from [Riebel's] foot, which of course was not true." (*Id.* at 24.) After a second surgery on Riebel's foot, Riebel was "spirited away to Lynnhurst Nursing Home where she was locked in isolation. Mitchell told the same lie to the Mgr. of Lynnhurst Nursing Home that [Plaintiff] pulled a surgical pin from [Riebel's] foot." (*Id.*) Plaintiff then sued Mitchell in Ramsey County for defamation for these allegedly false statements. (*Id.*) However, according to Plaintiff, due to the failure of a court reporter to transcribe an audio

tape of a conversation with Lynnhurst and Andrew Residence, and an apparent ruling regarding attorney-client privilege, the case was dismissed. (*Id.*)

On August 30, 2000, Riebel's ex-husband and Mitchell participated in a hearing to determine whether the ex-husband had to pay spousal support purportedly owed to Riebel. (Am. Compl. 25.) Based on some allegedly false statements of a psychiatrist who testified at the hearing regarding Plaintiff's belief that all of the blood would be drained from Riebel's body, cleaned, and put back into Riebel's body, "Social Security" named Mitchell payee for Riebel's daughter instead of Plaintiff. (*Id.*)

In October 2000, Plaintiff asserts that Mitchell again gave perjured testimony at a court hearing determining the scope of her "powers over [Riebel]." (Am. Compl. 25.) Apparently this false testimony related to the accuracy of Riebel's belief that she has a sister named Adrian Stankey. (*Id.*) Plaintiff was not allowed to testify at the hearing. (*Id.*)

Plaintiff also alleges that on December 18, 2000, Mitchell and her attorney[6] "brought a frivolous Petition for conservatorship of [Plaintiff's] person and estate, which was dismissed[.]" (Am. Compl. 25-26.) At that time, the judge presiding over the case "mentioned in the transcript that Mitchell's conservatorship of [Riebel's] estate had not yet been accepted by the Anoka County Recorder's

---

[6]     Defendant Linda Bogut represented Mitchell in her role as conservator for Riebel. This Court has already recommended that Plaintiff's claims against Bogut arising out of that representation be dismissed. (*See* Doc. No. 119.)

Office, but that a hearing was going to take place immediately after [Plaintiff's] conservatorship hearing." (*Id.* at 26.) That judge allegeldly later sanctioned Mitchell and her attorney and ordered them to pay $950 to an attorney with the last name "Guzman," who was apparently supposed to represent Plaintiff. (*Id.*)

In June 2001, Mitchell and her attorney "brought a Petition for a restraining order against [Plaintiff] in Hennepin County Court." (Am. Compl. 26.) Plaintiff asserts that:

> Judge Leung postponed the hearing several times hoping that [Plaintiff] would just not show up for the many hearings. The petition said something to the affect that [Platiniff] was found to be in the presence of [herself], which didn't make much sense to [her], but apparently Judge Tony Leung bought into the fake petition. [Riebel] was not present, nor was she represented by an attorney at any of the hearings. The petition and court order of Judge Leung were VOID.

(*Id.* at 26-27.) Apparently, around that same time Mitchell interfered with Plaintiff's attempts to interact with Riebel. (*See id.* at 27.)

In June 2002, Mitchell and her attorney "brought another petition for [a] restraining order against [Plaintiff]." (Am. Compl. 27.) However, their request for a restraining order was denied. (*Id.*) Plaintiff asserts that at some point thereafter, "Mitchell told [HCMC] staff that an expert psychologist who examined [Plaintiff] said [her] brain concussion was 'cured' and [she] showed no sign of any mental illness." (*Id.*) But, during a court hearing, Mitchell apparently said that she believed a brain injury could not be cured. (*Id.* at 27-28.)

In July 2002, Riebel "presented a petition to remove Mitchell as her conservator." (Am. Compl. 28.) Plaintiff asserts that "Conservator Mitchell and Andrew Residence manager concocted a story to have [Riebel] brought to Hennepin County Court to destroy her memory with Electric Shock, so she couldn't testify against Derrinda Mitchell at the October 7, 2002 hearing to remove Mitchell." (*Id.*) Apparently, Plaintiff attempted to stop the electroconvulsive therapy from taking place by bringing a motion for a temporary restraining order against HCMC in federal court, but this request was denied, and Riebel allegedly suffered "severe brain trauma from the [electroconvulsive therapy]." (*See id.*)

Plaintiff next asserts that "Mitchell defrauded Social Security many times while [Riebel] was in AMRTC." (Am. Compl. 28.) In August 2004, Riebel apparently provided Plaintiff with proof that "Mitchell obtained Group Residential Housing Grants from Hennepin County for several thousand dollars per month paid directly to Andrew Residence," and the Social Security Administration apparently made monthly rent payments to Andrew Residence. (*Id.*) According to Plaintiff, Mitchell was under some obligation "to notify Social Security to discontinue [Social Security Income] payments," but failed to do so. (*See id.*)

Plaintiff also asserts that Mitchell "financially exploited" Riebel by "stealing her money" and that Mitchell and Tracy Allen "were allowed to steal from conservatees as a reward to keep people in bondage to keep the 'federal funds' rolling in." (Am. Compl. 39-40.) And the Amended Complaint includes the

following allegation against Mitchell: "That the Civil Death ordered against [Plaintiff] by Judge Hoffman is VOID, which information was based on false statements in a petition for sanctions against [Plaintiff] by Attorney Linda Bogut, Conservator Derrinda Mitchell, and court and internet false information by Anoka Court Admin. Jane Morrow."  (*Id.* at 43 (emphasis in original).)

At the end of Mitchell's tenure as Riebel's conservator, her attorney prepared a final accounting of the conservatorship, and Mitchell signed the accounting report.  (Am. Compl. 28-29.)  Plaintiff claims that she proved to Riebel's attorney that this report, and perhaps other reports, "were not accurate and Mitchell and [her attorney] were removed from [Riebel's] conservatorship." (*Id.* at 29.)  On February 14, 2006, Professional Fiduciaries Incorporated, and Defendant Tracy Allen "replaced Mitchell as Conservator[.]"  (*Id.*)

## DISCUSSION

### I.   Standard of Review

A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a motion to dismiss, a court assumes all facts in the complaint

to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

## II.   False Claims Act Qui-Tam Claims

Plaintiff asserts a claim under the False Claims Act, purportedly bringing this case as a *qui tam* action, against all Defendants. The moving Defendants assert that Plaintiff has failed to state a claim, that any claims are barred by the statute of limitations, that Plaintiff failed to properly serve some Defendants, that

Plaintiff's claims are barred by res judicata, that certain Defendants are not proper parties, that Plaintiff's claims against certain Defendants are barred by the Eleventh Amendment, that this Court lacks subject-matter jurisdiction, and that Plaintiff lacks standing.  Without addressing all of these arguments, and offering no opinion on the merits of those arguments not addressed, this Court concludes that Plaintiff's False Claims Act claims should be dismissed on three grounds: (1) that Plaintiff has failed to state a claim under the False Claims Act; (2) that the vast majority of any False Claims Act claims are barred by the statute of limitations; and (3) that Plaintiff, proceeding *pro se*, cannot maintain a *qui tam* action under the False Claims Act.

## A.      Failure to state a claim

First, as to all of the moving Defendants, the Amended Complaint fails to state a claim for which relief can be granted under the False Claims Act.  To prevail on a claim under the False Claims Act, a plaintiff must show that "a defendant (1) 'knowingly presents, or causes to be presented, [to a federal official] a false or fraudulent claim for payment or approval,' or (2) 'knowingly makes . . . a false record or statement to get a false or fraudulent claim paid or approved.'"  *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (quoting 31 U.S.C. § 3729(a)(1)-(2)).  False Claims Act complaints are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), meaning that "'a party must state with particularity the circumstances constituting fraud or mistake.'"  *Id.* (quoting Fed. R. Civ. P. 9(b)).

If a complaint "alleges a systematic practice of submitting fraudulent claims, the FCA complaint 'must provide *some* representative examples of [the] alleged fraudulent conduct,' specifying 'the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'" *Id.* (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556-57 (8th Cir. 2006)). "Put another way, the complaint must identify the 'who, what, when, where, and how' of the alleged fraud." *Joshi*, 441 F.3d at 556 (quoting *United States ex. rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)).

Here, the Amended Complaint does not allege that any Defendant ever submitted a claim for payment or approval to the United States. The Amended Complaint alludes to false testimony, falsification of documents, and other alleged lies told by many of the moving Defendants, but the vast majority of these allegations have nothing to do with a claim submitted to a United States official for payment or approval. Nor do Plaintiff's allegations address how any of the moving Defendants "'intended that the false record or statement be material to the Government's decision to pay or approve the false claim.'" *See Roop*, 559 F.3d at 822 n.3 (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2126 (2008)).

There are a few allegations in the Amended Complaint that, liberally construed, could suggest that claims for payment were submitted to some entity

of the federal government.  For instance, Plaintiff refers to Andrew Residence's receipt of funds from the Social Security Administration for "rent," to Mitchell "defrauding" Social Security by failing to inform them that they should discontinue some unspecified payments, and to Mullon obtaining federal funds to renovate buildings in his role as a State of Minnesota employee.  These allegations are vague, conclusory, and, at times, incomprehensible, and, as such, they fall far short of pleading such matters with any specificity, let alone with the specificity required by Federal Rule of Civil Procedure 9(b).  Similarly, Plaintiff's general allegations of a widespread scheme by the State of Minnesota to defraud the federal government in connection with the State's receipt of federal funds to administer its civil commitment of mentally ill persons fail to comply with Rule 9(b).  In short, the Amended Complaint does not identify "'the time, place, and content of [any] defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'"  *Roop*, 559 F.3d at 822 (quoting *Joshi*, 441 F.3d at 556-57).  Therefore, any claims against the moving Defendants under the False Claims Act should be dismissed.

### B.    Statute of limitations

Second, any False Claims Act claims against the moving Defendants should be dismissed because they are barred by the statute of limitations.  "Under 31 U.S.C. § 3731(b)(1), complaints alleging violations of the FCA may not be brought 'more than 6 years after the date on which the violation . . . is

committed.'" *Joshi*, 441 F.3d at 555 n.2.[7] The six-year statute of limitations

"'begins to run on the date the claim is made, or, if the claim is paid, on the date

of payment.'" *United States ex. rel. Vosika v. Starkey Labs., Inc.*, Civ. No. 01-

709 (DWF/SRN), 2004 WL 2065127, at *3 (D. Minn. Sept. 8, 2004) (quoting

*United States ex. rel. Kreindler & Kreindlerr v. United Techs. Corp.*, 985 F.2d

1148, 1157 (2d Cir. 1993)).

In *Joshi*, the Eighth Circuit, after affirming a district court's order dismissing

the plaintiff's complaint for failure to state a claim, upheld the district court's

denial of leave to amend the complaint because the proposed amendments

failed to tie additional allegations of fraud occurring more than six years before

the filing of the complaint to a "continuous pattern of conduct." 441 F.3d at 558.

Thus, the claims were futile because they would be barred by the statute of

limitations. *Id.* Here, nearly all of the allegations in the Amended Complaint are

tied to events that took place more than six years ago. For instance, the majority

of Plaintiff's allegations against Andrew Residence and Karen Foy refer to events

that occurred in 1999, 2000, and 2002. Similarly, the allegations against Tom

Mullon refer to events that occurred in 1985 and in 1997-2000, the allegations

---

[7]     Plaintiff has made no argument that the statute of limitations should be
tolled pursuant to 31 U.S.C. § 3731(b)(2), which provides as follows: "A civil
action under section 3730 may not be brought . . . more than 3 years after the
date when facts material to the right of action are known or reasonably should
have been known by the official of the United States charged with responsibility
to act in the circumstances, but in no event more than 10 years after the date on
which the violation is committed."

against Daniel Dauth refer to events that occurred in 1999 and 2000, and the majority of Plaintiff's allegations against Derrinda Mitchell refer to events that took place in 1999-2002.[8]  Because all of these allegations refer to events that occurred more than six years prior to the commencement of this action, they are barred by the statute of limitations.

Plaintiff does mention that in 2004 Mitchell obtained housing grants from Hennepin County, and that Andrew Residence received that money as well as monthly rent payments from the Social Security Administration.  Although these allegations refer to events that occurred within six years of Plaintiff commencing this action, they have nothing to do with the conduct that is prohibited by the False Claims Act, and should be dismissed as discussed in section I.A., *supra*.

Plaintiff appears to argue that the False Claims Act claims are not barred by the statute of limitations because she suffers from a disability.  (Doc. No. 151, Pl.'s Resp. and Oral Argument against Defs. Mot. to Dismiss the Compl. . . . See Mem. of Law and Affirmation by Pl. Relator ("Pl.'s Resp.") 5.)  She asserts that she has been suffering from throwing up blood, that she had cataract surgery in November 2007, that she had gall-bladder surgery in November 2008, and that she had abdominal surgery in April 2009.  (*Id.*)  She also argues that she has been under a disability dating back to 1985 when she was forced to take

---

[8]     Plaintiff does not refer to any dates of events that give rise to her allegations against Jane Morrow.

psychiatric medication following a severe head injury. (*Id.*) And she asserts that she has back problems that constitute an ongoing disability. (*Id.*)

Plaintiff, however, has offered no support for the proposition that her ongoing medical conditions should toll the statute of limitations, or that her health concerns prevented her in any way from filing this case within six years of the events giving rise to her claims. In considering an argument that the statute of limitations on a statutory claim should be tolled due to a plaintiff's disability, the Eighth Circuit has stated that "[t]olling is appropriate only if the mental illness actually prevents the plaintiff from understanding his or her legal affairs and from complying with the time limit." *Jessie v. Potter*, 516 F.3d 709, 714 (8th Cir. 2008) (affirming district court's dismissal of Title VII complaint where the plaintiff failed to demonstrate that she suffered from a mental disability that prevented her from managing her own affairs generally or complying with timing requirements under the federal statute). Here, setting aside Plaintiff's conclusory statements that the statute of limitations is tolled by her various medical ailments, there is nothing in the record to suggest that she is suffering from some mental illness that actually prevented her from understanding her legal affairs and from complying with the six-year statute of limitations. Thus, any claims asserted under the False Claims Act should be dismissed because they are barred by the statute of limitations.

### C. Plaintiff cannot proceed *pro se* in this *qui tam* action

Finally, the False Claims Act claims against the moving Defendants should be dismissed because this Court lacks subject-matter jurisdiction to hear a *qui*

*tam* action brought on behalf of the United States by a party proceeding *pro se* because the United States has not intervened in the action. The False Claims Act "allows . . . private citizens acting on behalf of the United States, to recover treble damages from those who knowingly make false claims for money or property upon the United States, or who submit false information in support of such claims." *United States ex. rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 702 (8th Cir. 1995). The Eighth Circuit has indicated that, even though the individual relator brings the suit, in a *qui tam* action under the False Claims Act, individuals "'sue on behalf of the government as agents of the government, which is always the real party in interest.'" *United States ex. rel. Rodgers v. State of Arkansas*, 154 F.3d 865, 868 (8th Cir. 1998) (quoting *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217 n. 8 (9th Cir.1996)); *see also Stadley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) ("A qui tam statute effectively assigns part of the government's interest to a relator so that the relator has standing to assert an injury suffered by the government."). And the Eighth Circuit has also held that a *pro se* party may not bring a *qui tam* action on behalf of the United States. *United States v. Onan*, 190 F.2d 1, 6 (8th Cir. 1951) ("[W]e do not think that Congress could have intended to authorize a layman to carry on . . . as attorney for the United States but must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in court for anyone other than himself."). Other circuit courts have reached similar

conclusions.  *See Deutsche Bank Nat'l Trust Co. v. Holyfield*, 309 Fed. App'x

331, 332-33 (11th Cir. 2009) (holding that a private individual cannot maintain a

*qui tam* suit under the False Claims Act as a *pro se* relator because the district

court will lack subject-matter jurisdiction over the claim); *Timson v. Sampson*,

518 F.3d 870, 873-74 (11th Cir. 2008) (reasoning that "[t]he United States is the

real party in interest in a *qui tam* action under the False Claims Act," and 28

U.S.C. § 1654 permits only those licensed to practice law to conduct proceedings

in federal court on behalf of anyone other than herself, a *pro se* party could not

maintain an action on behalf of the United States) (quotations omitted); *Stoner v.*

*Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007)

(concluding that a *pro se* party may not bring a *qui tam* action where the United

States has declined to intervene).

    Here, although some of Plaintiff's filings appear to suggest otherwise, the

United States has *not* intervened in this action.  (Doc. No. 5, Gov't's Notice of

Election to Decline Intervention.)  Consistent with the law in this Circuit, and that

of other Circuits that have considered the issue, this Court concludes that Plaintiff

may not bring this *qui tam* action *pro se.*[9]  Therefore, any claims brought under

---

[9]     At the hearing, Plaintiff cited the Third Circuit's decision in *Rodriguez v.*
*Our Lady of Lourdes Medical Center*, 552 F.3d 297 (3d Cir. 2008), for the
proposition that she could maintain a *qui tam* action as a relator proceeding *pro*
*se.*  In *Rodriguez*, the court considered whether the plaintiff's appeal was subject
to a "30-day filing deadline that generally applies to civil suits or the 60-day
deadline that applies when the United States is a party."  *Id.* at 299.  The court
held that the 60-day deadline applied even though the United States declined to
                                            (Footnote Continued on Following Page)

the False Claims Act should be dismissed because Plaintiff is proceedings *pro se*.

## II. RICO Claims

Plaintiff also asserts RICO claims against the moving Defendants. The moving Defendants argue that the Amended Complaint should be dismissed because Plaintiff has failed to state a RICO claim, the Eleventh Amendment bars such a claim against certain Defendants, Plaintiff's claims are barred by the statute of limitations, and Plaintiff lacks standing to bring a RICO claim. Without addressing each of these arguments, and offering no opinion on the merits of those arguments not addressed in this Report and Recommendation, this Court concludes that Plaintiff's RICO claims should be dismissed because she has failed to state a claim for which relief can be granted and because her claims are barred by the statute of limitations.

---

(Footnote Continued from Previous Page)
intervene, but affirmed the dismissal of the plaintiff's complaint on the merits. *Id.* However, nothing in *Rodriguez*, stands for the proposition that a *pro se* plaintiff may maintain an *qui tam* action under the False Claims Act where the United States has declined to intervene. In fact, the plaintiffs in *Rodriguez* were represented by counsel. *Id.* (noting that the New Jersey law firm of Begelman & Orlow, P.C., were counsel for the plaintiff appellants). This Court also notes that the United States Supreme Court's decision in *United States ex rel. Eisenstein v. City of New York, New York*, 129 S. Ct. 2230, 2236-37 (2009), abrogates the Third Circuit's conclusion that the 60-day deadline applies even when the United States declines to intervene. *Id.* ("We hold that when the United States has declined to intervene in a privately initiated FCA action, it is not a "party" to the litigation for purposes of either § 2107 or Federal Rule of Appellate Procedure 4. Because petitioner's time for filing a notice of appeal in this case was therefore 30 days, his appeal was untimely.").

## A.    Failure to state a claim

First, the Amended Complaint fails to state a claim under RICO on which relief can be granted.  "To establish a RICO violation, a plaintiff must allege and prove '(1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity.'"  *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003) (quoting *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996)).  The Amended Complaint lacks any factual allegations that any moving Defendant ever committed an act that would amount to a RICO violation.  *See* 18 U.S.C. § 1961(1).  Moreover, the Amended Complaint lacks any allegation that the moving Defendants ever engaged in or were part of an enterprise that engaged in a pattern of such activity.  The Amended Complaint merely includes vague and conclusory allegations that all of the moving Defendants were part of an ongoing criminal enterprise, but such conclusory allegations are not sufficient to state a claim for relief for RICO violations.  *See Lange v. Hocker*, 940 F.2d 359, 362 (8th Cir. 1991) (affirming district court's dismissal of the plaintiff's RICO claims, in part, because they were "vague and conclusory").

## B.    Statute of limitations

Alternatively, any RICO claims against the moving Defendants should be dismissed because they are barred by the statute of limitations.  In the Eighth Circuit, "[c]ivil RICO claims are governed by a four-year statute of

limitations[, and] such an action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 238 (8th Cir. 1996) (quotations and citations omitted). Plaintiff's allegations against the moving Defendants refer to events that took place up to and including 2004, and according to the Amended Complaint, Plaintiff was aware of these events at the time they occurred. Because these allegations refer to events that occurred more than four years before this action was commenced, this Court recommends that all of Plaintiff's RICO claims be dismissed because they are barred by the statute of limitations.

### III. Plaintiff's Motion to Include Supplemental Complaint

Plaintiff has filed what appears to be a motion to file a supplemental complaint under Rule 15(d) of the Federal Rules of Civil Procedure. (*See* Doc. No. 120.)[10] Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Supplemental pleading can be allowed even where the original pleading fails to state a claim or defense. *Id.*

---

[10] Plaintiff filed another motion requesting leave to file a Supplemental Complaint (Doc. No. 126), that the District Court referred to this Court on January 22, 2010. For the same reasons set forth in this section, this Court denies this motion as well.

In Plaintiff's motion, she has not explained what the additional matters with which she wishes to supplement her Amended Complaint are.  Moreover, this Court has reviewed the numerous prolix documents that Plaintiff has filed, including those documents that this Court has previously stricken for failure to comply with the Local Rules, and concludes that none of these submissions sets forth anything that would support a supplemental pleading or save the Amended Complaint through amendment.  Put another way, in this action, Plaintiff has repeatedly filed motions and other self-styled documents that cannot save this action from dismissal, and she has not now offered a proposed supplementation or amendment that changes this conclusion.  Therefore, this Court denies Plaintiff's Notice of Motion and Motion to Include Supplemental Complaint.

## IV.   Plaintiff's Failure to Prosecute Non-Moving Defendants

As noted above, Plaintiff commenced this action on March 19, 2009. Defendants Cal Ludeman, as Minnesota Commissioner of Department of Human Services, Dr. Jonathan Uecker, Dr. James H. Gilbertson, and Conservator Tracy Allen, designee for Professional Fiduciaries, Inc. (collectively the "non-moving Defendants"), have yet to appear in this matter.  As of the date of this Report and Recommendation, it appears that Plaintiff has not effected service of the summons and complaint on these Defendants, and more than 120 days has passed without an enlargement of time.

This Court recommends that this case be dismissed without prejudice against these Defendants pursuant to Federal Rules of Civil Procedure 4(c)(1) and 4(m).  Rule 4(c)(1) states:

> A summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.

Fed. R. Civ. P. 4(c)(1).  Rule 4(m) states:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m).  The facts and circumstances of each case should be evaluated to determine if dismissal for failure to prosecute is warranted.  *Navarro v. Chief of Police, Des Moines, Iowa*, 523 F.2d 214, 217 (8th Cir. 1975).

Here, the record does not indicate that Plaintiff has served the Summons and Complaint on the non-moving Defendants within the 120-day period allowed by the Rules.  (*See* Doc. No. 23, Proof of Service of Summons and Compl. (containing unsigned Summons forms for the non-moving Defendants); Doc. No. 24, Proof of Service of Summons and Compl. (containing purported proof that Plaintiff achieved service by mail on all Defendants, but including only a receipt from a printing-services company and containing no acknowledgment of service by mail from any non-moving Defendant); Doc. No. 34, Proof of Service of Summons and Compl. (containing no acknowledgment of service by mail of any

non-moving Defendant); Doc. No. 82, Aff. in Supp. of Request for Entry of Default (requesting entry of default against Defendant Tracy Allen, but including no proof that service was achieved); Doc. No. 86, Aff. in Supp. of Request for Entry of Default (requesting entry of default against Defendant Dr. James H. Gilbertson, but including no proof that service was achieved); Doc. No. 90, Aff. in Supp. of Request for Entry of Default (requesting entry of default against Defendant Dr. Jonathan Uecker, but including no proof that service was achieved); Doc. No. 122, Service by Publications as to Defendants Dauth, Jonathan Charles Uecker, and James H. Gilbertson (containing documents purporting to show that service by publication was achieved pursuant to Minn. R. Civ. P. 4.04, but indicating no facts that circumstances permitting service by publication exist or that requirements for achieving such service were met); Doc. No. 131, Service by Publication as to Daniel Dauth and James Gilbertson (containing documents purporting to show that service by publication was achieved pursuant to Minn. R. Civ. P. 4.04, but indicating no facts that circumstances permitting service by publication exist or that requirements for achieving such service were met); Doc. No. 132, Service by Publication as to Dr. Jonathan Uecker (containing documents purporting to show that service by publication was achieved pursuant to Minn. R. Civ. P. 4.04, but not indicating that circumstances permitting service by publication exist or that requirements for achieving such service were met).)

Plaintiff is now notified of this deficiency through the service of this Report and Recommendation, and, therefore, has an opportunity, through her objections to this Report and Recommendation, to demonstrate good cause for her apparent failure to properly serve the non-moving Defendants. Pursuant to Federal Rule of Civil Procedure 4(m), the District Court "must dismiss the action without prejudice against [the] [D]efendant or order that service be made within a specified time." This Court recommends that if good cause is not shown the action be dismissed against the non-moving Defendants.[11]

## V.      Miscellaneous Motions

Plaintiff has also filed ten motions that have been referred to this Court for a Report and Recommendation. Some of these motions are motions for entry of a default judgment against certain Defendants. Others request that the undersigned and the District Court judge assigned to this matter be removed for bias, that Plaintiff be given a new trial, that this matter be certified as a class action, and that judgments in several previous cases be vacated. Because all of these motions lack merit, they should be denied.

---

[11]      Although such dismissal of the non-moving Defendants would be without prejudice, it appears that allowing service of the Amended Complaint on the non-moving Defendants would be futile because Plaintiff's False Claims Act and RICO claims against these individuals are deficient for the same reasons explained above. And, if the District Court adopts this Court's recommendation that Plaintiff be restricted from filing related cases in the future, *see* discussion, *infra*, Section VI, Plaintiff would be prohibited from re-filing such claims to the extent they relate to the commitment of her daughter unless she is represented by an attorney or has prior judicial approval.

## A.    Plaintiff's motions for default judgment

Plaintiff has filed motions for entry of default judgment against Derrinda Mitchell (Doc. No. 134), Dr. Jonathan Uecker (Doc. No. 144), Dr. James H. Gilbertson (Doc. No. 146), and Tracy Allen (Doc. No. 148).  "[E]ntry of default under Rule 55(a) must precede a grant of default judgment under Rule 55(b)." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998); *see also Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339 (7th Cir. 2004) ("The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of a default judgment."); *Burns v. Office of Attorney Gen.*, No. 05-858, 2007 WL 2247600, at *4 (D. Minn. Aug. 2, 2007).  The Second Circuit has described the process for obtaining a default judgment:

> The procedural steps contemplated by the Federal Rules of Civil Procedure following a defendant's failure to plead or defend as required by the Rules begin with the entry of a default by the clerk upon a plaintiff's request.  Rule 55(a). Then, pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside. If that motion is not made or is unsuccessful, and if no hearing is needed to ascertain damages, judgment by default may be entered by the court or, if the defendant has not appeared, by the clerk. Rule 55(b). Finally, Rule 55(c) authorizes a motion to set aside a default judgment pursuant to Rule 60(b). *See generally* 10 C Wright & A. Miller, Federal Practice and Procedure: Civil §§ 2681-2700 (1973).

*Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981); *see also Henry v. Tri-Servs., Inc.*, 33 F.3d 931, 932 (8th Cir. 1994).  A motion for default judgment is therefore procedurally improper where, as here, the movant has not yet accomplished the

first step: entry of default by the clerk. *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 683 (N.D. Iowa 1995).

The party seeking entry of default, in accordance with the first step of the default process, must show that the defendant was properly served. As part of the first step, the party seeking default judgment must "submit[] the required proof that the opposing party has failed to plead or otherwise defend." *Id.* "Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1269 n.12 (D. Kan. 2008). Therefore, a party seeking entry of default must show that the defendant was properly served. *Zeviar v. Local No. 2747, Airline, Aerospace & Allied Employees, IBT*, 733 F.2d 556, 558 n.3 (8th Cir. 1984).

Plaintiff has filed several requests for entry of default in this matter, but as explained in the District Court's December 14, 2009 Order (Doc. No. 124), "entry of default cannot be entered by the Clerk of Court because it cannot be determined based on the requests and supporting affidavits whether there is legally sufficient proof of service for the defendants named in those requests." (*Id.* (citing Fed. R. Civ. P. 4 and *Smith v. Gnassingbe*, No. 07-4167, 2009 WL 3300037, at *1 (D. Minn. Oct. 13, 2009).) With respect to Defendants Dr. Jonathan Uecker, Dr. James H. Gilbertson, and Tracy Allen, the reasons discussed, *supra*, Section IV, that the Complaint should be dismissed against them for Plaintiff's failure to prosecute also supports denial of Plaintiff's motions for entry of a default judgment.

As requested by the Court (Doc. No. 136), Plaintiff filed a Response to Derrinda Mitchell's Motion to Dismiss. (Doc. No. 163, Pl.'s Resp. to Derrinda Mitchell's Mot. to Dismiss ("Pl.'s Resp. to Mitchell").) In her response, Plaintiff argues that Mitchell's motion to dismiss should not be granted because Mitchell defaulted by failing to timely respond to the Complaint. (Pl.'s Resp. to Mitchell 1-2.) Plaintiff also appears to argue that entering default against Mitchell is appropriate because Plaintiff's daughter did not need a conservator, Mitchell was unjustifiably paid money for her services as a conservator to Plaintiff's daughter and to other individuals, and it is possible to determine the sum that Mitchell should be required to pay in this matter, which Plaintiff asserts amounts to one million dollars. (*Id.* at 2-4.)

Although the Clerk of Court has not entered a default with respect to Derrinda Mitchell, and entry of a default judgment would not be appropriate given the law in the Eighth Circuit, Plaintiff has, arguably, presented evidence that Mitchell acknowledged service by mail in this matter on September 15, 2009. (*See* Doc. No. 134 at 5 (signed acknowledgment form).) And it appears that Mitchell did not respond to the Amended Complaint within the time permitted by the Rules because she did not respond until January 5, 2010, when she first filed her motion to dismiss. (Doc. No. 138.) However, even if the Clerk of Court did enter a default against Mitchell, this Court would consider whether good cause justifies setting aside any such default. *See Johnson*, 140 F.3d at 784. To determine whether good cause exists, courts consider whether the defaulting

35

party's conduct is blameworthy, whether she has a meritorious defense, and whether the plaintiff would be prejudiced if the default were set aside. *Id.* Here, the record is not clear with respect to Mitchell's culpability for the default, but it is readily apparent that she has a meritorious defense because Plaintiff has failed to state a claim against her under either the False Claims Act or RICO. *See* discussion*, supra*, Sections II.A. & III.A. For these reasons, this Court would excuse any default by Mitchell, and hereby recommends that Plaintiff's motions for entry of default judgment be denied.

### B.     Plaintiff's motion to certify a class action

Plaintiff has filed a motion to certify this matter as a class action. (Doc. No. 127.) Plaintiff indicates that her motion is made under Fed. R. Civ. P. 23(a), and she conclusively asserts that she has met the requirements of numerosity, commonality, typicality, and adequacy of representation. Aside from these conclusive assertions and her parroting of the Rule's language, Plaintiff's motion consists of incomprehensible statements regarding the attorney for the Government, which has declined to intervene. Plaintiff has, therefore, provided no basis on which this Court could recommend certification of this matter as a class action. *See Helm v. Alderwoods Group, Inc.*, No. C08-01184 SI, 2009 WL 5206207, at *8 (N.D. Cal. Dec. 29, 2009) ("[A]lthough the court may not require preliminary proof of the substance of the plaintiff's claims, it need not blindly rely on conclusory allegations which parrot Rule 23 requirements[.]"). Thus, Plaintiff's motion for certification of a class action should be denied.

**C. Plaintiff's motion to vacate judgments**

Plaintiff has filed two motions seeking to have various judgments regarding previously filed cases in this District vacated and to receive a new trial in some or all of those cases. (*See* Doc. Nos. 125, 128.) These motions repeat accusations that judges of this District are guilty of high crimes for decisions that resulted in the dismissal of Plaintiff's previously filed cases, and that several of the judgments in these cases are "VOID." This Court construes these filings to be motions under Rule 59(e). Rule 59(e), which permits motions to alter or amend a judgment, "was adopted 'to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment.'" *Norman v. Ark. Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (quoting *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982)). Motions pursuant to Rule 59(e) serve the limited function of correcting "manifest errors of law or fact" or presenting newly discovered evidence. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). A Rule 59(e) motion may not be used to raise new legal theories or arguments. *Id.* "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)." *Id.* In addition, Rule 59(e) permits a motion to vacate a judgment. *See In re Champion*, 895 F.2d 490, 492 (8th Cir. 1990) (per curiam) ("We have treated the motion to vacate as one made under Fed.R.Civ.P. 59(e) .") Aside from the fact that none of Plaintiffs motions to vacate were filed within 10 days of the entry of judgment about which Plaintiff

complains, *see* Fed. R. Civ. P. 59(e), Plaintiff's motions should be denied because she has not shown that any of those prior decisions must be vacated because they involved "manifest errors of law or fact." *See Metro St. Louis Sewer Dist.*, 440 F.3d at 933. For this reason, this Court recommends that these motions be denied.

> ### D. Plaintiff's motions to remove the judges assigned to these cases

Plaintiff has filed two more motions in a series of motions requesting that the undersigned Magistrate Judge and District Court Judge John R. Tunheim be removed from this case for bias. (Doc. Nos. 133, 142.) The District Court has previously denied similar motions related to the undersigned Magistrate Judge on three occasions. (Doc. Nos. 106, 116; Doc. No. 124, Dec. 14, 2009 Order 3.) Plaintiff's current motions present no reasoned argument and provide no support for her assertions of bias. For these reasons, her motions to remove the judges assigned to this matter should be denied.

## VI. Prohibition on Filing Future Related Cases

At the January 8, 2010 hearing on the motions to dismiss and Plaintiff's motion to supplement the pleadings, several Defendants made an oral request that this Court consider entering an Order barring Plaintiff from filing future cases against them without a lawyer or without first obtaining judicial approval. By Plaintiff's own admission at the hearing, and as alleged in her Amended Complaint, this is not the first time she has litigated issues relating to the

commitment of her daughter and the State of Minnesota's and various

individuals' involvement with the commitment of mentally ill persons in

Minnesota.[12] (*See* Am. Compl., *passim*.) And a review of Plaintiff's publicly

accessible cases demonstrates that she has litigated similar issues several times

over the past 15 years.

For example:

- *In re Joanne M. Riebel, et al.*, Civ. No. 4:94-mc-11 (DEM/JGL)
  (D. Minn. 1994) (Plaintiff filed a case on behalf of her daughter
  seeking appointment of a general guardian and later petitioned for
  an emergency writ of habeas corpus);

- *In re Joanne Riebel*, Civ. No. 3:94-952 (MJD/JGL) (D. Minn. 1995)
  (reassigned petition for habeas corpus on behalf of Plaintiff's
  daughter denied because Plaintiff lacked standing, asserted only
  conclusory allegations, and failed to exhaust her state court
  remedies prior to bringing the action);

- *Sammarco v. State of Minn., et al.*, Civ. No. 00-SC-368 (RHK/JMM)
  (D. Minn. 2000) (purported *qui tam* action under the False Claims
  Act generally challenging Anoka County's housing of vulnerable
  adults and the State of Minnesota's alleged fraud on private insurers
  through civil-commitment proceedings and challenging the
  conservatorship of Riebel);

- *Sammarco et al. v. Mitchell, et al.*, Civ. No. 00-2153 (MJD/JGL)
  (D. Minn. 2000) (claiming that Riebel was arrested and imprisoned

---

[12] It appears that the Anoka County District Court has issued an order placing
a restriction on Plaintiff's filing of cases in that county without an attorney. (*See*
Am. Compl. 43-44 (referring to the "Civil Death" ordered by state District Court
Judge John Hoffman; Pl.'s Resp. 80 ("Judge John Hoffman ordered [that Plaintiff]
can't bring a case in court, or represent [her]self as a defendant in a lawsuit
against [her]."); Doc. No. 58, Mem. of Law in Supp. of Mot. to Dismiss of Def.
Jane Morrow ("Morrow Mem.") 1 (referring to a February 2003 order of Anoka
County District Court barring restricting Plaintiff from filing further lawsuits in that
court).)

without a warrant, that Riebel was denied effective assistance of counsel, that Riebel was denied the right of appeal, that her conservator, Derrinda Mitchell, had committed felonies against Riebel and Plaintiff, that Riebel was being administered toxic levels of drugs, that Mitchell should be removed as conservator, and that prior civil commitments were "false);

- *United States ex rel. Sammarco v. State of Minnesota, et al.*, 01-SC-568 (MJD/JGL) (D. Minn. 2002) (purported *qui tam* Complaint regarding the commitment and housing of mentally ill persons, including Plaintiff's daughter dismissed as barred by res judicata). The dismissal was upheld by the Eighth Circuit. *Sammarco v. Minnesota*, 60 Fed. App'x 651 (8th Cir. 2003) ("Having carefully reviewed the record and appellant's brief, we agree with the district court that Sammarco's complaint is barred by res judicata.");

- *Riebel ex rel. Sammarco v. Belzer, et al.*, Civ. No. 07-2175 (MJD/JSM) (D. Minn. 2007) (habeas petition on behalf of Plaintiff's daughter dismissed without prejudice for failure to exhaust state court remedies because Plaintiff brought the petition in federal court before the commitment proceedings had begun).

Here, Plaintiff's Complaint was filed in March 2009 and her Amended Complaint was filed in August 2009. Since that time, Plaintiff has filed numerous documents, several of which were stricken from the record for non-conformity with the Local Rules for motion practice in this District (*See* Doc. No. 72), and several others which are repetitive (*compare* Doc. Nos. 125-28, *with* Doc. Nos. 62-65). Since several of her motions were stricken, Plaintiff has made little or no effort to comply with the rules in her numerous filings. Further, at each hearing, without any offer of proof, Plaintiff accuses individuals, including attorneys who are not testifying under oath, of having perjured themselves. Plaintiff refuses to litigate within the rules or accept an adverse ruling, and she relitigates the very

same claims against any party who has any connection to the civil commitment of her daughter or how that commitment is administered.

Based on Plaintiff's repeated past practice of litigating the same issues and her proven inability to follow Court rules, the requested sanction of imposing restrictions on Plaintiff's future filing of cases is reasonable. As District Court Judge Paul A. Magnuson recently explained in another case where a similar restriction was imposed on another filer of repetitive, baseless claims, "[t]he purpose of litigation is to resolve disputes. There is no resolution to this dispute, because there is no dispute to resolve. Plaintiff's allegations are utterly without merit." *Yang v. City of Shakopee, et al.*, Civ. No. 09-3216 (PAM/JJK) (Order of Dec. 30, 2009, at 3-4.) Further, such a restriction does not deprive Plaintiff of her right to access the courts because she may obtain legal representation, even in the absence of an inability to pay for it, from any number of legal aid organizations in Minnesota. *See id.* at 4. If claims Plaintiff attempts to bring in the future lack merit, she will be unable to secure such representation, but may also, in that event, seek permission from a Judge of this Court to file a new case. *See id.* And, if she seeks judicial permission to file baseless claims, that permission will be denied. *See id.* But, if Plaintiff has legitimate claims, she will be allowed to avail herself of the courts. *See id.*

This Court can sympathize with Plaintiff's distress as a result of her daughter's commitment, but her distress with those proceedings does not justify her litigating outside the rules and does not provide her a cause of action where

the facts as alleged do not support any claim.  Given her past history of filing cases related to her daughter's commitment that do not survive dismissal, absent a sanction such as that suggested by some of the moving Defendants, Plaintiff will continue to burden the federal court system with repetitive, meritless, and duplicative lawsuits, and she will continue to haul Defendants into this Court to defend against frivolous claims.  Thus, this Court recommends granting the moving Defendants' oral request to bar Plaintiff from filing any future actions related to the commitment of her daughter unless she is represented by counsel or obtains pre-authorization from a judge of this Court.

## ORDER

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff Relator Darlene Sammarco's Notice of Motion and Motion to Include Supplemental Complaint (Doc. No. 120), is **DENIED**; and

2.      Plaintiff's Notice of Motion and Motion to Include Supplemental Complaint (Doc. No. 126), is **DENIED**.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendant Andrew Residence's Motion to Dismiss (Doc. No. 41), be **GRANTED**;

2.	Defendant Tom Mullon's Motion to Dismiss (Doc. No. 45), be **GRANTED**;

3.	Defendant Jane Morrow's Motion to Dismiss (Doc. No. 56), be **GRANTED**;

4.	Defendant Daniel Dauth's Motion to Dismiss (Doc. No. 111), be **GRATNED**;

5.	Defendant Karen Foy's Motion to Dismiss (Doc. No. 95), be **GRANTED**;

6.	Defendant Derrinda Mitchell's Motion to Dismiss Pleadings and/or for a More Definite Statement (Doc. No. 138), be **GRANTED**;

7.	Plaintiff's remaining claims against Defendants Cal Ludeman, as Minnesota Commissioner of Department of Human Services, Dr. Jonathan Uecker, Dr. James H. Gilbertson, and Conservator Tracy Allen, designee for Professional Fiduciaries, Inc., be **DISMISSED WITHOUT PREJUDICE** for failure to prosecute;

8.	Defendants Daniel Dauth. Andrew Residence, and Karen Foy's oral request for a sanction on Plaintiff's filing of future related cases (*See* Doc. No. 153 (noting oral request at the January 8, 2010 hearing)), be **GRANTED** to the extent that Plaintiff be prohibited from filing future cases relating to the commitment of her daughter unless she is represented by counsel or obtains pre-authorization from a judge of this Court;

9.      The remaining pending motions (Doc. Nos. 125, 127, 128, 133, 134,

142, 144, 146, and 148), be **DENIED**; and

10.     This matter be **DISMISSED** in its entirety.


Date: January 28, 2010

                                          _s/ Jeffrey J. Keyes_
                                          JEFFREY J. KEYES
                                          United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**February 8, 2010,** a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within 14 days after service thereof.  All briefs filed under
this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C.
§ 636 to review a transcript of the hearing in order to resolve all objections made
to this Report and Recommendation, the party making the objections shall timely
order and file a complete transcript of the hearing within fourteen days of receipt
of the Report.